IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA

v.                                                                    CASE NO.: 4:04cr7-SPM

LALANDA PRICE,

     Defendant.

_____/

**ORDER DENYING MOTION TO VACATE SENTENCE
AND GRANTING CERTIFICATE OF APPEALABILITY**

THIS CAUSE comes before the Court for consideration of the magistrate

judge's report and recommendation dated July 9, 2009 (doc. 143).  In the report

and recommendation, the magistrate judge concludes that Defendant is entitled

to withdraw his guilty plea and have his judgment and sentence vacated due to

ineffective assistance of counsel in two areas (1) failure to interview witnesses

Ciji Perry and Shandrea Nicole Sampson, and (2) failure to advise Defendant

about limitations on third-party cooperation.  The Government filed an objection

(doc. 146) and Defendant filed a response (doc. 147).

The Court agrees in large part with the magistrate judge's report.

However, having reviewed the written arguments of counsel, the record, and

being otherwise fully informed in the premises, the Court disagrees with some

key aspects and finds, contrary to the magistrate judge's recommendation, that

Defendant is not entitled to relief.

## I.      Background

On the day of trial, May 17, 2004, Defendant Lalanda Price pleaded guilty

to one count of conspiracy to distribute and to possess with intent to distribute

more than 50 grams of crack cocaine and one count of possession with intent to

distribute more than 50 grams of crack cocaine.  Although Defendant took issue

with the Government's evidence, he stated that it was in his best interest to enter

the guilty plea and make an effort to provide substantial assistance to the

Government.  The Court accepted the guilty plea and excused the venire that

had been summoned for Defendant's jury selection.

Defendant moved to withdraw his guilty plea before sentencing on

grounds that he was not successful in providing substantial assistance to the

Government.  Defendant also moved to withdraw because he learned that a

woman named Ciji Perry could provide impeachment testimony against

Defendant's cousin, Ronald Allen, who was a co-defendant in the case and a

cooperating witness for the Government.[1]

The Court denied Defendant's motion to withdraw his guilty plea and

---

[1]  Allen was charged with the same offenses and facing a mandatory life
sentence because he had two prior felony drug convictions: sale of marijuana in
2003 and possession of cocaine in 2001.  Allen pleaded guilty pursuant to a plea
and cooperation agreement on April 12, 2004.

CASE NO.: 4:04cr7-SPM

sentenced Defendant to the twenty-year minimum mandatory sentence required by statute. On appeal, Defendant challenged the denial of his motion to withdraw. The United States Court of Appeals for the Eleventh Circuit affirmed.

Defendant timely filed a motion to vacate under Title 28, Untied States Code, Section 2255. The United States Magistrate Judge held an evidentiary hearing on the motion and issued a report and recommendation concluding that defense counsel provided ineffective assistance. After careful consideration of the record and the applicable legal standards, this Court finds that defense counsel was not ineffective.

## II. Standard for Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, a defendant must establish two elements: (1) that counsel's performance fell below the wide range of reasonably competent performance under prevailing professional standards and (2) that but for counsel's deficient performance, the outcome of the proceedings probably would have been different. Strickland v. Washington, 466 U.S. 668, 687-89 (1984). In evaluating counsel's performance, "every effort [must] be made to eliminate the distorting effects of hindsight . . . [and] a court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689

This standard applies to all types of ineffective assistance of counsel claims, including challenges to guilty pleas. Stano v. Dugger, 921 F.2d 1125,

CASE NO.: 4:04cr7-SPM

1149-51 (11th Cir. 1991). A guilty plea must be entered into with the advice of competent counsel regarding alternative courses of action open to the defendant. Id. When counsel does not provide the defendant with reasonably competent advice, a guilty plea may be deemed involuntary and, as such, open to attack. Id.

To be successful in the attack, a defendant must show that but for the incompetent advice of counsel, he would not have pleaded guilty and, instead, would have insisted on going to trial. Id. at 1150 (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985). Where the alleged deficiency of counsel is "failure to investigate or discover potentially exculpatory evidence the determination of whether the error prejudiced the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea." Id. "This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial." Id.

### III. Evidence against Defendant

Defendant and his cousin, Ronald Allen, were arrested at the Tallahassee Mall on October 19, 2003, with 58.6 grams of crack cocaine. Allen was delivering the crack cocaine to Regina McFadden, who was working as a confidential source with Tallahassee Police Officer David Odom.

Allen had asked Defendant for a ride to the mall earlier in the day. They

went in Defendant's Nissan Sentra[2] but when they reached the parking lot of the

mall, Defendant switched to the passenger seat and Allen took over driving.

Defendant spoke with McFadden on a cellular telephone twice to find out where

at the mall she was. Defendant and Allen parked next to McFadden's vehicle at

the mall. Defendant got out of the Sentra, supposedly to look for McFadden.

Officers were at the scene and arrested Allen for driving while license

suspended. A search of the Sentra incident to arrest revealed a box with five

clear plastic sandwich bags containing crack cocaine. Defendant's fingerprint

was on one of the plastic bags.

Post-Miranda, Allen admitted that he planned to sell the cocaine for

$1,500. Allen denied at first that Defendant was involved. Later, Allen stated

that he was trying to protect Defendant and that Defendant knew that Allen was

selling cocaine to McFadden because he had shown Defendant the cocaine at

the house before they left to go to the mall. Allen noted, however, that Defendant

was not receiving any money from the cocaine transaction. Allen further stated

that Defendant helped him purchase the cocaine from South Florida by providing

him with a $1,400 check so that he would not need to carry a large amount of

---

[2] At the change of plea hearing, the Government stated that the Sentra belonged to a friend of Defendant. Doc. 75, p. 12, ln. 6. The presentence investigation report states that the Sentra belonged to Defendant, although the Sentra is not listed as a vehicle for Defendant in a later section of the report. PSR at ¶¶ 9 and 26. At the evidentiary hearing on his motion, Defendant acknowledges that the Sentra was his. Doc. 141, p. 56, ln. 6-9.

CASE NO.: 4:04cr7-SPM

cash when he traveled.

Defendant learned after he entered his guilty plea that Allen also stated that Defendant arranged to borrow a car from Ciji Perry (who is an important part of Defendant's ineffective assistance of counsel claim) for Allen to drive to South Florida. This information was in a DEA-6 report that was not required to be disclosed to Defendant and only provided to Defendant on October 18, 2004, some five months after the trial date and guilty plea. See Doc. 71 at ¶ 7; Doc. 141 at p. 147-48.

In addition to the testimony of Allen, the Government intended to present testimony from Officer Odom concerning Defendant's post-Miranda statements. According to Officer Odom, Defendant acknowledged that there were two ounces of crack cocaine inside the box.[3] Defendant further stated that he believed Allen would give him a little spending money for taking Allen to the mall.

The confidential source, McFadden, could also testify about Defendant's participation in the drug transaction. McFadden stated in her interview with Officer Odom that when Allen went to South Florida to purchase the cocaine she called Defendant to ask if Allen was back. Defendant told her that Allen had not returned and that he was nervous because Allen had part of his money. McFadden also spoke with Defendant on the telephone when Defendant and

---

[3] One ounce is approximately 28.35 grams. Two ounces is 56.7 grams, and just slightly less that the 58.6 grams of crack cocaine in the box.

Allen were trying to find McFadden to meet with her at the mall.

This was the essence of the Government's case.

### IV.    Decision to Enter Guilty Plea

Defendant's lawyer, Richard Greenberg, is an experienced criminal

defense attorney.  Mr. Greenberg did not make a recommendation to Defendant

to plead guilty or to not plead guilty.  Instead, he advised Defendant that if he

went to trial and was found guilty, he would receive a 20-year sentence.  If

Defendant entered a plea and could provide what the Government deemed to be

substantial assistance, Defendant would not get 20 years.  Doc. 141 at p. 172, ln.

10-20.

Mr. Greenberg went over with Defendant the evidence that he expected

the Government to present, and noted that Allen was expected to testify that

Defendant knew about the cocaine at the house before they left to go to the mall.

Mr. Greenberg believed that because Allen was Defendant's cousin, Allen's

testimony would carry a lot of weight.  Mr. Greenberg also considered

Defendant's statements to Officer Odom admitting that he was taking Allen to the

mall and that he knew that Allen was delivering cocaine to McFadden.

If Defendant were to testify at trial, he could explain that some of the

statements attributed to him by Officer Odom were not accurate.  In particular,

while Defendant told Officer Odom that he knew about the cocaine, Defendant

only learned about it in the car, where he opened the box and touched a bag, just

CASE NO.: 4:04cr7-SPM

before he was arrested.[4]  Defendant would also state that he left the car to get

away from the situation, not to find McFadden.  Defendant would further explain

that he gave the $1,400 check to Allen as repayment on a loan, not to facilitate

the purchase of the cocaine from South Florida.  Defendant would testify that the

"spending money" he expected to receive from Allen was a few dollars to cover

the cost of gas.  The problem, however, was that Defendant was on probation for

four counts of sale of cocaine.  According to Mr. Greenberg, this was a "huge

consideration" in deciding whether to go to trial.  Doc. 141 at p 139, ln 6.

Defendant testified at the evidentiary hearing that Mr. Greenberg

explained to him some reasons against going to trial.  These included his prior

convictions.  In addition, Allen, the police officers, and McFadden were expected

to testify against Defendant.

Defendant understood that if he pleaded guilty, he could possibly earn a

substantial assistance motion through cooperation provided by himself or by third

parties.  He did not know, however, that the Government had limitations on third-

party cooperation.  According to Defendant, Mr. Greenberg left Defendant with

the impression that third-party cooperation would be a better option than going to

trial and trying to defend the case.

---

[4]  In a meeting with Mr. Greenberg on April 21, 2004, Defendant insisted
that he never saw Allen with cocaine.  In a meeting with Mr. Greenberg on May
11, 2004, Defendant acknowledged that he saw the cocaine and touched it.  Doc.
141 at pp162-63.

Mr. Greenberg had also advised Defendant that he had no witnesses to call at trial, despite the fact that Defendant named witnesses who could state that the $1,400 check that Defendant gave to Allen was repayment on a loan. These witnesses were Twana Price (Defendant's fiancé), Corey Price (Defendant's brother), Tia Skipper (Defendant's cousin), and Shandrea Nicole Sampson (Allen's girlfriend). Twana Price and Shandrea Nicole Sampson could testify that in 2002, Allen was arrested and Defendant was given over $1,400 to go toward Allen's bond. More money was being collected for the bond, but when Broward County officials placed a hold on Allen, Allen could not bond out. With Allen's permission, Defendant used Allen's bond money for his living expenses. Defendant thus owed approximately $1,400 to Allen.

In addition to the testimony about the $1,400, Ms. Sampson could further testify that Allen told her that Defendant gave him a ride to the Tallahassee Mall on October 19, 2003. Allen did not mention to Ms. Sampson whether or not Defendant had knowledge of the cocaine. Ms. Sampson could also testify that when Allen went to South Florida, she gave him $250, which she expected to be returned to her. Allen did not give her the money when he returned, however, and Allen told her that he bought six cookies of crack cocaine.

Tia Skipper and Corey Price could testify that when Defendant was in

CASE NO.: 4:04cr7-SPM

Afghanistan[5], Allen left messages for Defendant that he needed the money back.

Mr. Greenberg spoke with Twana Price and Corey Price in preparation for trial. He had no notes regarding Tia Skipper and he did not speak with Shandrea Nicole Sampson until after Defendant entered his guilty plea. (Mr. Greenberg's failure to interview Ms. Sampson prior to trial is cited by the magistrate judge as an instance of ineffectiveness that prejudiced Defendant in his decision to plead guilty).

The day before trial, Defendant told Mr. Greenberg that he was not interested in cooperating and wanted to proceed to trial. Defendant told Mr. Greenberg that he was no longer involved with selling drugs and did not know anyone in the drug business. Nevertheless, because Defendant had previously cooperated successfully (which resulted in Defendant receiving probation on the four counts of sale of cocaine and being allowed Defendant to remain in the military), and because Defendant indicated that he might be able to gather information to cooperate, Mr. Greenberg believed Defendant could provide cooperation. Doc. 141, pp. 170-71. According to Mr. Greenberg, Defendant told him "that he still had some ideas of some people he might be able to gather–get information on." Doc. 141 at p. 171, ln. 10-12.

---

[5] Defendant was in the military and deployed to Afghanistan from March to September of 2003. Doc. 141, p. 20, ln. 5; p. 76. He borrowed the money from Allen shortly before leaving for Afghanistan and paid Allen back within a month of his return on September 15, 2003. Doc. 141 at pp. 65-66; 76.

CASE NO.: 4:04cr7-SPM

When Defendant and Mr. Greenberg discussed cooperation again on the day of trial, Defendant told Mr. Greenberg that he did not think he could provide cooperation on his own.  Mr. Greenberg asked Defendant about getting someone else to help him, and Defendant thought he could do so.  Mr. Greenberg and Defendant talked about having Defendant's aunt help, but the specifics of the cooperation were not discussed.  Doc. 141, pp. 180-81.

Mr. Greenberg then talked to the prosecutor about third-party cooperation. The prosecutor told Mr. Greenberg that third-party cooperation was a possibility, and Mr. Greenberg relayed this information to Defendant.  Mr. Greenberg was not aware that the cooperation by family members would only be credited to Defendant if the targets were people with whom Defendant had previous drug involvement.  Doc. 141 at pp. 148-150.   When Defendant entered his guilty plea, however, he knew that there were not guarantees that the Government would file a substantial assistance motion on his behalf and that the Government retained complete discretion over the matter.

Defendant contends that he would not have entered a guilty plea if he had known about the limitations on third-party cooperation.  He also states that he would not have pleaded guilty if witnesses were available to discredit Allen by testifying that (1) the $1,400 Defendant gave to Allen was not for a drug deal and (2) that Ciji Perry never had any conversations with Defendant about borrowing her car.

CASE NO.: 4:04cr7-SPM

## V.     Failure to Interview Government Witness Ciji Perry

In evaluating whether Mr. Greenberg was deficient for failing to interview Ciji Perry, it is important to note a few things.  First, the DEA-6 report of Officer Odom's interview with Allen was disclosed to Mr. Greenberg five months after the trial date and guilty plea.  So even if Mr. Greenberg had interviewed Ms. Perry before trial, he would not have known to ask her whether Defendant discussed borrowing a car for Allen to use.  Mr. Greenberg had no information on Ms. Perry.

Second, there is no indication that the Government was aware that Ms. Perry would discredit Allen's statement or otherwise provide testimony that would be beneficial to Defendant.  In fact, the Government denies having such knowledge and did not interview Ms. Perry before trial.  Doc. 146, pp. 6-7.  Therefore, the Government had no obligation under Brady or Giglio to advise Defendant about Ms. Perry.

Finally, the Government is not required under Federal Rules of Criminal Procedure or the local rules to disclose to the defense the names of witnesses it intends to call at trial.  See Fed. R. Crim. P. 16; N.D. Fla. Loc. R. 26.3.  The Government provided Defendant with a witness list in this case because this Court's standard practice, for case management purposes, requires the prosecution and the defense to submit witness lists a week before trial.  See United States v. Napune, 834 F.2d 1311, 1318 (7th Cir. 1987) (for orderly administration of justice, a district court may require submission of witness lists).

CASE NO.: 4:04cr7-SPM

Notwithstanding, defendants in federal court are not entitled to witness lists as a matter of right.  Id. at 1317.  Ordinarily, defense counsel does not have knowledge of the Government's witnesses and it is not prejudicial per se for defense counsel to fail to interview a government witness for impeachment purposes.  Aldrich v. Wainwright, 777 F.2d 630, 636 (11th Cir. 1985).

In light of the foregoing, the Court finds that Mr. Greenberg was not deficient for failing to interview Ms. Perry before trial.  Mr. Greenberg had no reason to know that Ms. Perry could provide testimony favorable to Defendant.  Her name was disclosed to him just a week before trial.  Mr. Greenberg had not received the DEA-6 report where Allen mentions her name, and the main focus of the case against Defendant rested on Defendant's actions on the day that he drove Allen to the mall and the $1,400 check.  As this Court must "evaluate [Mr. Greenberg's] "pre-trial actions from the standpoint of what was possible at the time rather than from the omniscient perspective made possible by a reviewing court's awareness of [future events]", the Court finds that Mr. Greenberg's failure to interview Ms. Perry before trial did not fall below reasonable professional standards.

Furthermore, even if Mr. Greenberg had interviewed Ms. Perry before trial, it is not probable that the outcome of the proceedings would have been different.  First and foremost, Mr. Greenberg did not have the DEA-6 report where Allen claims that Defendant arranged for Allen to use Ms. Perry's car to drive to South

CASE NO.: 4:04cr7-SPM

Florida.  Without this information, Mr. Greenberg had no way of eliciting the

impeaching testimony from Ms. Perry that Defendant states would have swayed

him to go to trial instead of pleading guilty.  Second, the details of Allen's trip to

South Florida were peripheral to the Government's case against Defendant.

Thus even if Allen was mistaken about Ms. Perry being the person who supplied

the car, impeachment on that detail would not significantly weaken the

Government's case against Defendant.  Accordingly, the Court finds that

Defendant has not demonstrated he was prejudiced by Mr. Greenberg's failure to

interview Ms. Perry.

**VI.     Failure to Interview Shandrea Nicole Sampson**

With regard to Twana Price, Corey Price, Tia Skipper, and Shandrea

Nicole Sampson, the magistrate judge concluded that ineffectiveness had only

been shown as to Shandrea Nicole Sampson because she was the only witness

that Mr. Greenberg failed to interview before trial and who Defendant presented

competent evidence of what her testimony would be.[6]  Assuming Mr. Greenberg

actually knew about Ms. Sampson prior to trial and was deficient for failing to

interview her, the Court finds that Defendant was not prejudiced because

information from Ms. Sampson was not likely to affect his decision to plead guilty.

---

[6]  None of the witnesses testified at the evidentiary hearing but Defendant, Mr. Greenberg, and Mr. Dixon (Defendant's uncle) testified about the testimony Ms. Sampson could give.

Ms. Sampson's testimony covered three areas. First, that Defendant owed Allen approximately $1,400. Second, that Ms. Sampson provided $250 to Allen prior to his trip to South Florida. And third, that Allen told Ms. Sampson that Defendant drove Allen to the mall but he did not state whether or not Defendant knew about the cocaine transaction with McFadden.

Defendant already knew about the first matter when he entered his guilty plea. According to Defendant, he told Mr. Greenberg before trial that Ms. Sampson knew about the efforts to raise Allen's bond and knew that Defendant owed Allen approximately $1,400. Doc. 141 at pp. 24-26. Defendant stated that Twana Price could testify about the same matter, making Ms. Sampson's testimony cumulative. Thus Defendant was not deprived of this information as a result of Mr. Greenberg's failure to interview Ms. Sampson.

Furthermore, the impeaching impact of the testimony is questionable. The fact that Defendant owed Allen $1,400 is not inconsistent with Allen's statement that Defendant aided Allen by providing a check before Allen went to South Florida so that Allen would not have to travel with a large amount of cash. It also helps explain Allen's statement that Defendant was not expecting any payment from the cocaine transaction. This information was therefore not likely to affect the outcome of trial or consequently Defendant's decision to plead guilty.

The second and third matters were not known to Defendant, but the significance of the information is negligible at best. The fact that Ms. Sampson

CASE NO.: 4:04cr7-SPM

provided $250 to Allen is not material to the issue of whether Defendant

knowingly aided Allen in getting cocaine from South Florida or knowingly aided

Allen in the cocaine transaction with McFadden by driving Allen to the mall.

The fact that Allen later told Ms. Sampson that Defendant drove Allen to

the mall, without also mentioning that Defendant knew about the cocaine, could

suggest that Defendant did not know about the cocaine.  It could also suggest

that Defendant knew about the cocaine since they both were arrested and Allen

did not state that Defendant lacked knowledge.  The testimony is of questionable

value to a defense at trial and would not likely affect the outcome of trial or

Defendant's decision to plead guilty.

### VII.    Failure to Advise about Limitations on Third-Party Cooperation

The magistrate judge concluded that Mr. Greenberg was ineffective

because he only asked the Government whether third-party cooperation would

be considered, but failed to ask and did not know whether the United States

Attorney's office had special requirements for third-party cooperation.  Now, in

hindsight, Mr. Greenberg should have asked if third-party cooperation had any

special requirements.  But his failure to do so in the circumstances as they

existed does not fall below the standard of reasonable professional assistance.

It is important to note that at the time, third-party cooperation was

discussed only as a possibility and no details were known about the cooperation.

Defendant also told Mr. Greenberg "that he still had some ideas of some people

CASE NO.: 4:04cr7-SPM

he might be able to gather–get information on," so Mr. Greenberg reasonably believed there was a chance of Defendant himself being able to provide assistance, especially since Defendant had cooperated previously when he was charged with four counts of sale of cocaine. Doc. 141 at p. 171, ln. 10-12. Furthermore, when Mr. Greenberg asked the prosecutor if third-party cooperation could be considered, the prosecutor said it could be. As with most agreements to cooperate, however, the United States Attorney's office retained compete discretion, and there was no guarantee that the cooperation would qualify for the filing of a substantial assistance motion on Defendant's behalf. Defendant was aware of this when he decided to plead guilty.

"The test for ineffectiveness is not whether counsel could have done more; perfection is not required." Waters v. Thomas, 46 F.3d 1506, 1518 (11th Cir. 1995). "Nor is the test whether the best criminal defense attorneys might have done more." Id. "To state the obvious: the trial lawyers, in every case, could have done something more or something different." Chandler v. United States, 218, F.3d 1305, 1313 (11th Cir. 2000). What matters is whether "the particular and identified acts or omissions of counsel 'were outside the wide range of professionally competent assistance.'" Id. (quoting Burger v. Kemp, 483 U.S. 776, 795 (1987)). The test is "whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial." Waters, 46 F.3d at 1512 (quoting White v. Singletary, 972 F.2d 1218, 1220-21

(11th Cir. 1992)).

In this case, Mr. Greenberg had reason to believe that Defendant could provide substantial assistance to the Government through his own efforts. There was also a possibility of providing substantial assistance through the efforts of Defendant's aunt, or other family members. Mr. Greenberg confirmed with the prosecutor that third-party cooperation was possible. However, the Government retained complete discretion in determining whether to file a substantial assistance motion on Defendant's behalf. The Government did not advise Mr. Greenberg that cooperation by family members would be limited to targets with whom Defendant had previous drug involvement. The fact that Mr. Greenberg did not know about the limits and failed to ask if any limits applied to third-party cooperation, under these circumstances, is not outside the range of reasonable competent assistance. Furthermore, Mr. Greenberg's overall advice to Defendant when Defendant entered his guilty plea was reasonable given the evidence of Defendant's guilt.

It was unfortunate that Defendant was facing a twenty-year minimum mandatory sentence for knowingly helping his cousin with a drug transaction, especially since all evidence showed that Defendant was not going to receive any real financial benefit. But that was the situation Defendant faced. Had he proceeded to trial, a conviction was very likely.

## VIII. Conclusion

CASE NO.: 4:04cr7-SPM

Defendant has failed to demonstrate that Mr. Greenberg provided ineffective assistance. The DEA-6 report that reveals the significance of Ciji Perry as a witness was not in fact provided (nor required to be provided) to the defense prior to trial. Thus no deficient performance or prejudice has been shown with regard to Mr. Greenberg's failure to interview Ms. Perry.

Likewise, no deficient performance or prejudice has been shown with regard to Mr. Greenberg's failure to interview Shandrea Nicole Sampson. Ms. Sampson's relevant testimony was known to Defendant at the time he entered his guilty plea and cumulative of the testimony of Twana Price. Other aspects of Ms. Sampson's testimony were of negligible value to the defense.

Finally, in hindsight, it is known that Defendant was not able to provide substantial assistance either on his own or through his family members. However, at the time Defendant entered his guilty plea, he was aware that the Government retained complete discretion to file or to not file a substantial assistance motion on his behalf. Mr. Greenberg asked the Government about the possibility of third-party cooperation and was told it was possible. Mr. Greenberg was not deficient for failing to know or to ascertain before Defendant entered his plea that the Government had certain limits on the kinds of third-party cooperation that could qualify for a substantial assistance motion.

Having found that Mr. Greenberg was not ineffective, Defendant's § 2255 motion will be denied. The magistrate judge's contrary conclusions as to these

CASE NO.: 4:04cr7-SPM

matters demonstrate that reasonable minds could differ in this regard and that Defendant has made a substantial showing of the denial of a constitutional right. Accordingly, it is

ORDERED AND ADJUDGED:

1.     Defendant's Motion Under 28 U.S.C. § 2255 to Vacate a Sentence by a Person in Federal Custody (doc. 108) is denied.

2.     Pursuant to 28 U.S.C. § 2253(c), the Court hereby certifies that Defendant may appeal this order as to whether Mr. Greenberg was ineffective for (1) failing to interview Ciji Perry and Shandrea Nicole Sampson prior to the trial date, and (2) failing to know or inquire at the time Defendant entered his guilty plea whether third-party cooperation would be credited to Defendant only if the targets were people with whom Defendant had previous drug involvement.

DONE AND ORDERED this 19th day of March, 2010.


_s/ Stephan P. Mickle_

Stephan P. Mickle
Chief United States District Judge